UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LORENZO GUARINO,<br>　　　　Plaintiff<br>v.<br><br>R.W. GRANGER AND SONS, INC. and<br>SCAVONE C&M CONSTRUCTION CO., INC.,<br>　　　　Defendants<br>and<br><br>R.W. GRANGER AND SONS, INC.,<br>　　　　Defendant/<br>　　　　Third-Party Plaintiff<br><br>v.<br><br>FENESTRATION ARCHITECTURAL<br>PRODUCTS, INC.,<br>　　　　Third-Party Defendant | CIVIL ACTION NO: 04-10246 |

## DEFENDANT'S, SCAVONE C&M CONSTRUCTION CO., INC., PRE-TRIAL MEMORANDUM

The Defendant, Scavone C&M Construction Co., Inc. ("Scavone"), hereby submits this Pre-Trial Memorandum in accordance with the Court's Order of March 16, 2007, reserving the right to supplement and amend, as follows:

I.　　CONCISE SUMMARY OF THE EVIDENCE

This case involves claims by the Plaintiff, Lorenzo Guarino, who alleges that he was injured at a construction site at the Old Rochester High School in Marion, Massachusetts ("the Project") on February 5, 2002. Specifically, Guarino alleges injuries to his left ankle as a result of a trip and fall on the construction site. At the time of the accident the Defendant, R.W. Granger and Sons, Inc. was the general contractor for the project. The Plaintiff was employed by the window and curtain wall installation

subcontractor for the project, Fenestration Architectural Products, Inc. The Defendant, Scavone C&M Construction Co., Inc. performed the concrete flat work for the project.

The Plaintiff alleges that the accident occurred while he was walking beside a lull which was in the process of distributing windows throughout the site. Guarino was directing the lull when he allegedly "stumbled" on 2 sheets of wire mesh and caught his foot under a gas pipe before falling to the ground. The Plaintiff and Third-Party Plaintiff have alleged that the mesh was associated with concrete flat work and therefore Scavone was responsible for its placement in the area of the Plaintiff's accident. Scavone denies that it was negligent or in any way contributed to the Plaintiff's alleged injuries.

The Plaintiff alleges that the mesh which was involved in the accident was associated with concrete flat work.  The uncontroverted evidence will show that Scavone had no role in the purchase, transportation, storage, hoisting or removal of the mesh on site.  Importantly, the mesh reinforcement was specifically excluded from Scavone's subcontract for the project and was purchased by Granger. Moreover, Granger was responsible for hoisting the mesh into position for Scavone to install. Finally, the evidence will show that Granger was responsible to remove and store any and all unused pieces of mesh from the work area. Importantly, the 2 pieces of mesh on which the Plaintiff allegedly fell were reportedly full 10 x 20 foot sheets, one laying completely over the other. Accordingly, to the extent the mesh was improperly stored on the site as alleged, Scavone was not responsible for the storage or placement of such material.  This fact is admitted by Granger, whose superintendent, Al Dupont, acknowledged that Granger was responsible to move the mesh in this area.  In short, the evidence will show

that Granger had the sole responsibility for transporting, removing and storing the mesh material on the site.

Moreover, the evidence will show that Scavone was not on site for approximately three (3) weeks before the Plaintiff's accident. Accordingly, there is no evidence that they controlled the area where the Plaintiff fell, or the material upon which he fell, at the time of this fall.

Additionally, the evidence will show that the Plaintiff's fall and injury was caused by temporary gas pipes installed above ground rather than the mesh material. Specifically, the Plaintiff alleges that he stumbled on mesh and subsequently caught his foot under and tripped over the gas pipe lines on the site. The evidence will show that the contractor responsible for installing the gas lines, BOC Gas and/or Granger failed to bury the pipes, thus creating the unsafe condition which resulted in the Plaintiff's injury. Finally, the evidence will show that the Plaintiff caused and contributed to his own injury and failed to perform his job in a safe and workmanlike manner by failing to observe and avoid an open and obvious danger on the construction site.

Plaintiff's Claimed Damages

Scavone disputes the nature and extent of the Plaintiff's claimed injuries and further disputes the extent of the Plaintiff's claimed vocational limitations and claimed economic loss. Specifically, certain medical records indicate that the Plaintiff had pre-existing arthritic changes in the ankle which were not causally related to this accident. Moreover, Scavone disputes any allegation that the Plaintiff is totally and permanently disabled from returning to work in some capacity. The Plaintiff was previously cleared to turn to light duty work, although the Plaintiff now claims complications due to

unsuccessful fusion surgery in his left ankle. Scavone anticipates that the Plaintiff will have a residual earning capacity when he reaches a medical end result.

II.     FACTS ESTABLISHED BY THE PLEADINGS, STIPULATIONS OR ADMISSIONS OF COUNSEL

    1.)     The Plaintiff's accident occurred on February 5, 2002 at the Old Rochester Regional High School Construction site in Marion, Massachusetts ("the Project");

    2.)     At the time of the accident, the Plaintiff was employed by Fenestration Architectural Products, Inc. ("Fenestration"), the window installation subcontractor for the project;

    3.)     At all relevant times, R.W. Granger and Sons, Inc. ("Granger") was the general contractor for the project;

    4.)     Scavone entered into a written subcontract with Granger to perform concrete flat work on the project.

    5.)     The Plaintiff suffered injuries to his left ankle as a result of this accident.

III.     CONTESTED ISSUES OF FACT

    1.)     Scavone contests the cause of the Plaintiff's claimed trip and fall. Specifically, Scavone states that the gas pipe in the area of the accident rather than the mesh wiring was the cause of the Plaintiff's fall and injuries. Moreover, Scavone states that the Plaintiff failed to perform his work in a safe and workmanlike manner and that the Plaintiff caused his accident by failing to notice and avoid an open and obvious workplace hazard on the construction site.

    2.)     Scavone contests that it was responsible for the purchase, storage or transport of the wire mesh material that allegedly caused the Plaintiff's accident. Scavone

states that the mesh was purchased, transported and stored on site by Granger as general contractor on the project. Accordingly, Scavone states that it had no control over the mesh left or placed outside the building. The evidence will show that the mesh on which the Plaintiff allegedly tripped was not placed in that area by Scavone, its agents or employees.

    3.) Scavone contests the nature and extent of the Plaintiff's claimed injuries and states that a portion of the treatment sought by the Plaintiff after this accident potentially relates to a pre-existing medical condition which is unrelated to this accident.

IV.    JURISDICATIONAL QUESTIONS

Scavone is unaware of any jurisdictional questions at this time.

V.    QUESTIONS REAISED BY PENDING MOTIONS

Scavone is unaware of any pending motions in this matter.

VI.    ISSUES OF LAW

    A.    Scavone Has No Duty to the Plaintiff and No Duty to Indemnify the Third-Party Plaintiff Where It Had No Responsibility for the Purchase, Transportation or Storage of the Wire Mesh

Scavone states that it cannot be held liable to either the Plaintiff or Third-Party Plaintiff in this matter where it had no responsibility for the purchase, transport, storage, hoisting or removal of the wire mesh which allegedly caused the Plaintiff's accident. Dominic Scavone, the former owner of Scavone, testified that he was hired by Granger solely to install the wire mesh as part of the concrete flat work inside the building. Importantly, the mesh material was specifically excluded as an item to be furnished from Scavone's subcontract on the project. Dominic Scavone testified that the mesh would be purchased by Granger and stored on the construction site by Granger until it was needed.

5

Granger would then be responsible to hoist the material into the area where Scavone would do its installation work, also known as the work platform. Upon completion of the work, Granger was responsible to remove all unused pieces and store it on the site. At no time did Scavone remove mesh from their work platform or store spare pieces of mesh outside the building. Accordingly, Scavone neither placed the mesh in the area of the Plaintiff's accident nor was responsible for overseeing where the mesh would be stored when not in use. Granger's responsibility to remove the subject mesh upon which the Plaintiff tripped was acknowledged by site superintendent, Al Dupont, in his deposition. This position is further supported by the Plaintiff's expert, Arnold Haight, who opines that Granger failed in its obligations to keep the jobsite clear of debris. Haight makes no such allegations against Scavone.

Scavone was not onsite for three weeks before the Plaintiff's fall. There is no evidence to support that Scavone controlled the area where the Plaintiff fell or the material upon which he fell.

To establish that Scavone was negligent in this matter, the Plaintiff must first show that Scavone owed the Plaintiff a legal duty. Nelson v. Massachusetts Port Authority, 55 Mass. App. Ct. 433, 435 (2002). "Absent a duty of care there is no actionable negligence." Dhimos v. Cormier, 400 Mass. 504, 507 (1987). In the present case, Scavone had no control over the condition which allegedly caused the Plaintiff's injury and therefore could not owe a legal duty to the Plaintiff to protect him from the subject condition.

Additionally, the Third-Party Plaintiff's claims for indemnity must also fail where there is no evidence that Scavone acted in a negligent manner. Scavone entered into a

written subcontract with R.W. Granger in August of 2001 to perform Cast-in Place Concrete at the Old Rochester Junior Senior High School. As part of that contract, Scavone agreed to

> "defend, indemnify and hold harmless [Granger]...from and against any and all claims, damages, liabilities, judgments, losses and expenses ...<u>arising out of or resulting from the performance of [Scavone's] work</u> or the presence of [Scavone's] employees, agents suppliers or subcontractors at the site...

It is clear that this accident did not result from Scavone's work where the transport, storage, hoisting, or placement of unused or excess mesh was not in Scavone's scope of work. Accordingly, to enforce this provision would in effect force Scavone to indemnify Granger for Granger's sole negligence and therefore would invalidate the provision pursuant to M.G.L. c. 149 s. 29(c).

    B.    The Plaintiff is Not Entitled to Recover Where His Accident Was Caused By an Open and Obvious Condition

The Plaintiff should further be barred from recovering any award against the Defendants where the Plaintiff's injury was clearly caused by an open and obvious condition on the worksite. Specifically, the Plaintiff alleges that he stumbled on a 10 x 20 foot piece of wire mesh and an above ground gas pipe in broad daylight. Pictures taken of the scene after the accident show that both the mesh and pipe were clearly visible on the ground. Moreover, the Plaintiff was directing a lull at the time of the accident and was responsible to review ground in the area of the accident to ensure that it was safe for the machinery. Accordingly, the Plaintiff's accident was the result of a trip and fall on an open and obvious condition.

7

Massachusetts case law is clear that there is no duty to protect from dangers obvious to persons of ordinary intelligence. Toubiana v. Priestly, 402 Mass. 84, 89 (1988). This is because it is not reasonably foreseeable that a person exercising reasonable care for his own safety would suffer injury from such blatant hazards. See, for example, O'Sullivan v. Shaw, 431 Mass. 201, 204 (2000), citing, Blackmer v. Toohil, 343 Mass. 269, 271-272 (1961); St. Rock v. Gagnon, 342 Mass. 722, 723-724 (1961). Accordingly, the Plaintiff has no basis for recovery in this matter where the condition which caused his fall was clearly visible to Guarino prior to the accident.

    C.    Evidentiary Issues

Scavone reserves the right to supplement this memorandum on evidentiary issues where it is unclear at this point what evidence the parties intend to introduce at the trial of this matter.

VII.    REQUESTED AMENDMENTS TO PLEADINGS

Scavone does not request any amendments to its pleadings at this time.

VIII.    ADDITIONAL MATTERS TO AID IN DISPOSITION

The Plaintiff plans to have further ankle fusion surgery in the near future. The Defendants anticipate a further orthopedic exam pursuant to Rule 35 after the surgery as well as a vocational rehabilitation exam, both at which the Plaintiff agrees to undertake. The parties have also agreed to mediate this matter with Attorney John Fitzgerald in July, 2007.

Scavone is not aware of any other additional information which may aid in disposition of the case at this time.

IX.   LENGTH OF TRIAL

Scavone estimates that the trial of this matter will take approximately five (5) days.

X.   WITNESSES

A.   Fact Witnesses

1.  Dominic Scavone, 3300 Alternate 19, Lot 18, Dunedin, FL 34684;

2.  Lorenzo Guarino, 80 Dewey Avenue, Pawtucket, RI 02861;

3.  Ernest O'Brien, 20 Woodland Drive, Westminster, MA 01473;

4.  Alvin DuPont, 754 Sodom Road, Westport, MA 02790;

5.  Robert LaPierre, 41 Boston Turnpike, Shrewsbury, MA 01545;

6.  Steven Campbell, 41 Boston Turnpike, Shrewsbury, MA 01545;

7.  Luann Scott, 41 Boston Turnpike, Shrewsbury, MA 01545;

8.  Melissa Hicks, 5 Eastern Avenue, East Providence, RI 02914;

9.  Ken Gelinas, 5 Eastern Avenue, East Providence, RI 02914.

10. Designated Representative of BOC Gas;

11. Designated Representative of Old Rochester Regional School District;

12. Dr. Christopher W. Digiovanni, 1287 North Main Street, Providence, RI 02904;

13. Sharon Lee Gilson, 90 Glendale Meadow Lane, Burrillville, RI 02830.

Scavone reserves the right to supplement this witness list prior to trial and reserves the right to call any witnesses listed by the other parties in this matter.

B. Expert Witnesses

1. John P. O'Donovan, P.E., CSHM
   124 Tallman Avenue
   Cranston, RI 02910

2. Norman C. Hursh, Sc.D.
   Boston University
   Sargent College of Health
   and Rehabilitation Sciences
   Dept. of Rehabilitation Counseling
   635 Commonwealth Avenue
   Boston, MA 02215

3. Hyman Glick, M.D.
   Chief of Orthopedics
   Harvard Vanguard Medical Associates

4. Professor Harold Petersen
   Economic Department
   Boston College
   Chestnut Hill, MA 02467

Scavone states that it has filed all expert disclosures with the Court pursuant to Rule 26. Scavone reserves the right to supplement these disclosures where the designated experts are still in the process of reviewing recently completed discovery in this matter.

Respectfully submitted,

The Defendant,
Scavone C&M Construction Co., Inc.
By its attorneys,

Mark B. Lavoie, BBO# 553204
McDonough, Hacking & Lavoie, LLC
One Washington Mall
Boston, MA 02108
(617) 367-0808

**CERTIFICATE OF SERVICE**
I hereby certify that I served a copy of the foregoing pleading on all parties by electronic service, to all counsel of record.
Signed under the pains and penalties of perjury.
DATED: April 3, 2007